UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MACLAREN EUROPE LIMITED,                          :
                                                  :
                    Plaintiff,                    :
                                                  :  INDEX No. 11 cv 4688 (HB)
        -against-                                 :
                                                  :
ACE AMERICAN INSURANCE COMPANY,                   :
a/k/a ACE USA,                                    :
                                                  :
                    Defendant.                    :
------------------------------------------------------------x


MEMORANDUM OF LAW BY PLAINTIFF MACLAREN EUROPE LIMITED
IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE COMPLAINT


Of Counsel,                          CLAYMAN & ROSENBERG LLP
Paul S. Hugel (PH4749)               ATTORNEYS FOR PLAINTIFF
                                     305 Madison Avenue - Suite 1301
                                     New York, New York 10165
                                     (212) 922-1080  phone
                                     (212) 949-8255  facsimile

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 1

    The Policies and the Insureds ...................................................................... 1

    The Purported Cancellation of Coverage ..................................................... 3

    The Applicable Legal Standard .................................................................... 4

ARGUMENT ........................................................................................................... 5

    I. MEL's PAYMENT OF THE PREMIUM TO ITS NEW YORK BROKER
       CONSTITUTED PAYMENT TO ACE ..................................................... 5

    II. NEW YORK LAW CONTROLS CANCELLATION OF THE POLICY ........................... 8

        A. The Policy's "Conformity with Law" Clause Requires
           Application of New York Law ................................................. 8

        B. Even Absent the "Conformity with Law" Clause, the
           Policy would be Governed by New York Law ..................... 9

    III. THE POLICY WAS NOT CANCELLED IN CONFORMITY WITH NEW
        YORK LAW ............................................................................... 13

    IV. ACE HAS NOT ESTABLISHED THAT ITS CANCELLATION OF THE
        POLICY WAS EFFECTIVE UNDER ENGLISH LAW ................................. 15

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

Cases                                                                 Page(s)

*Anglo Am. Ins. Group, P.L.C. v. CalFed, Inc.,*
    899 F. Supp. 1070 (S.D.N.Y. 1995)........................................................6

*Arash Shipping Enterprises Co. Ltd v. Groupama Transport,*
    [2011] EWCA Civ 620 ........................................................................16

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010)...............................................................4

*Ashcroft v. Iqbal, __ U.S. __,*
    129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................................4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................4

*Bohlinger v. Zanger,*
    306 N.Y. 228, 231-32, 117 N.E.2d 338, 339 (1954) ................................6

*Bruckner Plaza Associates v. Generali Ins. Co. of Trieste & Venice, U.S. Branch,*
    172 A.D.2d 408, 568 N.Y.S.2d 786 (1st Dept. 1991)............................10

*Certain Underwriters at Lloyd's London v. Foster Wheeler Corp.,*
    36 A.D.3d 17 (1st Dept 2006)...............................................................10

*Cherry Hill Textiles, Inc. v. Ins. Co. of Pennsylvania,*
    276 A.D.2d 519, 714 N.Y.S.2d 301 (2000) ........................................13

*DTC Rest., Inc. v. Pub. Serv. Mut. Ins. Co.,*
    302 A.D.2d 349, 753 N.Y.S.2d 892 (2003) ........................................14

*Evvtex Co., Inc. v. Hartley Cooper Associates Ltd.,*
    911 F. Supp. 732 (S.D.N.Y. 1996)
    *aff'd,* 102 F.3d 1327 (2d Cir. 1996) ...................................................6

*Gen. Fire & Cas. Co. v. Mackpat Corp.,*
    33 A.D.2d 765, 306 N.Y.S.2d 314, 315 (1969) ......................................7

*Globe Indem. Co. v. Gilligan,*
    73 Misc. 2d 27, 341 N.Y.S.2d 18 (Dist. Ct. 1973) ................................7

*Greater New York Mut. Ins. Co. v. Axentiou,*
    193 A.D.2d 474, 597 N.Y.S.2d 401 (1993) ..........................................6

*Joseph v. Calvert Ins. Co.*,
    183 Misc. 2d 192, 702 N.Y.S.2d 750 (Sup. Ct. 1999) ...........................................14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ...........................................................................................9

*Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*,
    08 CIV. 1316 (HB), 2009 WL 137055 (S.D.N.Y. 2009)
    *aff'd*, 628 F.3d 46 (2d Cir. 2010) ..................................................................10,11

*Maloney v. Rhode Island Ins. Co.*,
    115 Cal. App. 2d 238, 245, 251 P.2d 1027, 1031 (1953) .......................................7

*Maryland Cas. Co. v. Cont'l Cas. Co.*,
    332 F.3d 145 (2d Cir. 2003)................................................................................10

*Micro Design Group Ltd. v. Norwich Union Ins. Ltd.*
    [2005] EWHC 3093 ..........................................................................................16

*Minett v. Forrester*
    [1811] 128 Eng.Rep. 441 ...................................................................................7

*Pacific & General Insurance Co Ltd. v. Richard Dennis Hazell*,
    1991 Folio No. 359 ...........................................................................................16

*Starr v. Sony BMG Music Entertainment*,
    592 F.3d 314, 321 (2d Cir.2010)..........................................................................4

*Wausau Business Ins. Co v. Horizon Administrative*,
    __ F.Supp.2d __, 2011 WL 2945827 (S.D.N.Y. July 21, 2011)............................10

*Zeevi & Sons v. Grindlays Bank*,
    37 N.Y.2d 220, 371 N.Y.S.2d 892, 333 N.E.2d 168 ...........................................12

*Zeller v. British Caymanian Insurance Company Ltd.*,
    [2008] UKPC 4 ................................................................................................15

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
    84 N.Y.2d 309, 642 N.E.2d 1065 (1994)..............................................................9

<u>Statutes</u>

New York Insurance Law § 2121 ..............................................................................6,7

New York Insurance Law § 3426 ...........................................................................13,14

Plaintiff Maclaren Europe Limited ("MEL") seeks a declaratory judgment that it is entitled to defense and indemnification under a commercial liability insurance policy ("the Policy"). The Policy was issued by Defendant ACE American Insurance Company ("ACE") with a term of coverage from April 10, 2006 through April 10, 2007. ACE has moved to dismiss the Complaint on the grounds that the Policy was cancelled in July 2006 for non-payment of premium. The only issue raised by ACE's motion is whether ACE's purported cancellation of the Policy was effective.

## FACTUAL BACKGROUND

<u>The Policies and the Insureds</u>

MEL is an English corporation with its principal place of business in Northamptonshire, England. MEL is the exclusive European distributor of Maclaren baby strollers under a licensing agreement with Maclaren Hong Kong. Ltd. (Toama Dec. ¶ 2).

Maclaren USA, Inc. is Connecticut corporation based in Norwalk, Connecticut. Maclaren USA was the North American regional distributor of Maclaren baby strollers under a licensing agreement with Maclaren Hong Kong. Maclaren USA and MEL are wholly independent entities. Neither is a parent or subsidiary of the other. They have no common owners, directors or officers. (Toama Dec. ¶ 3).

Maclaren Hong Hong manufactures and sells Maclaren strollers. (Toama Decl ¶ 4). It licenses regional rights to sell Maclaren strollers to MEL, formerly to Maclaren USA and to approximately 20 other regional distributors around the world. (Toama Decl. ¶ 4).

In its motion, ACE repeatedly mischaracterized Maclaren USA as MEL's "Connecticut Affiliate." (ACE Br. at 2, 9). This supposed "affiliation" is based upon a misreading by ACE of

the document attached as Exhibit A to the Powers Declaration.[1]  ACE states that one of the principals of Maclaren USA is also a director of MEL. (ACE Br. at pp 2-3).  However, the document submitted by ACE clearly states that this individual, Farzad Ali Rastegar, resigned as a director of MEL in 2002.  Powers Dec. Exh. A at p. 6. The documents offered by ACE do not show that Mr. Rastegar was a director of MEL at any time relevant to this action, that he was a director of MEL while he was a principle of Maclaren USA, or that MEL and Maclaren USA were "affiliates."

While MEL and Maclaren USA are not "affiliates" they, along with Maclaren Hong Kong, sought to obtain a better rate on insurance by jointly purchasing liability coverage for their respective operations. In March 2004, Maclaren USA, MEL and Maclaren Hong Kong procured an International Advantage Commercial Liability Policy from ACE.  Hugel Decl. Exh. B at Bates Nos. 0001, 0036. On the General Declarations page of the policy ACE identified the mailing address for the insured as the Norwalk Connecticut office of Maclaren USA.  *Id.* at Bates No. 0001. On September 10, 2004, about half way through the one-year term of that policy, ACE issued an endorsement to the policy removing Maclaren USA as an insured. *Id.* at Bates No. 0037. MEL and Maclaren Hong Kong remained as the two named insureds.  *Id.*

In March 2005, MEL and Maclaren Hong Kong renewed their coverage with ACE for an additional one year. Exh. C.  Although Maclaren USA was no longer insured under the policy, ACE did not update the mailing address on the declarations page, which continued to list the Maclaren USA, Norwalk, Connecticut address.  *Id.* at Bates No. 0039.  On March 10, 2005, ACE

---

[1] On a Rule 12(b)(6) motion ACE can submit documents referenced in the Complaint such as the insurance policy and cancellation notice. However, its submission of corporate records and governmental records not referenced in the complaint (such as Exhibits A and B to the Powers Declaration) is improper and these documents should be disregarded. Nevertheless, since ACE has offered the documents and made inaccurate statements based upon their content, we have addressed them herein.

extended the MEL and Maclaren Hong Kong's coverage for and additional 30 days. *Id.* at Bates No. 0078.  ACE subsequently endorsed the Policy to extend the coverage for an additional year. *Id.* at Bates No. 0079.

As alleged in the Complaint, MEL and Maclaren Hong Kong procured their ACE policy through a New York insurance broker named Sahgner Risk Managers LLC ("Sahgner"). Exh. A, ¶ 5.  MEL wired the full premium due on the 2006-07 extensions to a New York bank account designated by Saghner before the prior coverage expired.  *Id.* ¶ 7.  The documentation provided by ACE indicates that Sahgner procured the policy through another New York broker named Program Brokerage Corporation. ("PBC").  *Id* ¶ 6.  Sahgner is no longer in business and Plaintiff has no firsthand knowledge as to whether Sahgner forwarded the premium to PBC or if PBC in turn forwarded it to ACE.

The Purported Cancellation of Coverage

In early 2009, MEL was notified of claims by parents who alleged their children had been injured by Maclaren strollers marketed by MEL. Since some of these alleged injuries were said to date back to the period when MEL was covered under ACE commercial liability policies. (March 10, 2004 through April 10, 2007), MEL promptly notified ACE of the claims. In an email from ACE dated February 11, 2009, MEL was informed, for the first time, that ACE had not received the premium owed on the April 2006 renewal and that ACE had cancelled the policy  for non-payment effective July 10, 2006. In response to a request for documentation concerning the cancellation, ACE provided MEL with a Notice of Cancellation apparently sent by ACE on June 27, 2006 to the Norwalk Connecticut office of Maclaren USA.  At the time this notice was sent, Maclaren USA had not been a named insured on the policy for nearly two years. There is no indication in ACE's papers whether the notice of cancellation was received by

3

Maclaren USA, nor is there any indication that the notice of cancellation was sent to the insureds' broker.  What is clear is that up until February 2009, no notice of cancellation was mailed, emailed or conveyed by ACE to any address actually used by MEL or Maclaren Hong Kong.

Based on its purported cancellation, ACE has disclaimed any obligation to defend or indemnify MEL for claims arising after July 10, 2006. MEL has been notified of at least eight claims against it for injuries alleged to have been suffered between July 10, 2006 and April 10, 2007.  It brings this action seeking a declaratory judgment that ACE is obligated to defend and indemnify MEL against those claims. ACE has moved to dismiss the Complaint arguing that its cancellation of the Policy was proper and effective.

The Applicable Legal Standard

When considering a Rule 12(b)(6) motion, the court draws all reasonable inferences in the plaintiff's favor and accepts all well-pleaded factual allegations in the complaint as being true. *Starr v. Sony BMG Music Entertainment,* 592 F.3d 314, 321 (2d Cir.2010).  A complaint need allege "only enough facts to state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). While "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice" *Ashcroft v. Iqbal, __ U.S. __,* 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), a plaintiff is not required to plead evidence or facts beyond what is needed to make the claim plausible. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010).

**ARGUMENT**

ACE argues that the Complaint should be dismissed on the grounds that English law applies to the Policy and that its cancellation of the Policy was effective under English law. ACE's premise and its conclusion are both mistaken. The Policy contains a "Conformity with Law" clause that states that the Policy must be read to conform with the laws of the state in which it was issued – which is New York, not England. New York is the center of gravity for this Policy and its laws would therefore govern the Policy even absent the Conformity with Law clause. Under New York law, ACE's notice of cancellation was defective and its purported cancellation of the Policy was ineffective. Moreover, even if English law governed the Policy, ACE has not established that its cancellation was valid under that law either.

Before addressing the choice of law and cancellation rules, there is a more fundamental issue that must be addressed.  ACE acknowledges that it delivered the Policy to a broker in New York and MEL has alleged that it paid the full premium to its insurance broker in New York. New York law determines the legal effect of the payment by MEL to the New York insurance broker.  If the broker received the premium payment as ACE's agent, then ACE's purported cancellation of the policy for non-payment would be improper, regardless of what law is applied.

I.      MEL's Payment of the Premium to its New York Broker
        Constituted Payment to ACE.

As alleged in the Complaint, the full premium due on the Policy was wired to an insurance broker located in the State of New York. Under New York law, this constituted payment to ACE. Any subsequent cancellation of the Policy by ACE for non-payment was therefore improper under the terms of the Policy.

5

The Complaint alleges that the Policy was procured through a New York based insurance broker named Sahgner Risk Managers LLC.  Exh. A ¶ 5.  MEL wired the premium owed for the Policy to Sahgner's bank account in New York. *Id.* ¶ 7.

It is "a well settled principle of common law that an insurance broker, when acting for an insured, is deemed the agent of the insured . . . and that at the same time the broker has authority to receive premiums on behalf of the insurer." *Bohlinger v. Zanger*, 306 N.Y. 228, 231-32, 117 N.E.2d 338, 339 (1954).  New York had codified this common law principal in Insurance Law § 2121, that states in relevant part:

> Any insurer which delivers in this state to any insurance broker or any insured represented by such broker a contract of insurance pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within ninety days after the due date of such premium or installment thereof or after the date of delivery of a statement by the insurer of such additional premium.

N.Y. Ins. Law § 2121(a).   The purpose of this rule and is to "to relieve the insured from all risks stemming from a broker's possible dishonesty or insolvency." *Greater New York Mut. Ins. Co. v. Axentiou*, 193 A.D.2d 474, 474, 597 N.Y.S.2d 401, 401 (1993). Accordingly, when an insured pays a New York broker the premium due on a policy, this constitutes payment to the insurance company. In other words, under New York law, the insured's broker holds premiums collected from the insured as an agent of the insurer. *Evvtex Co., Inc. v. Hartley Cooper Associates Ltd.*, 911 F. Supp. 732, 739 (S.D.N.Y. 1996) *aff'd*, 102 F.3d 1327 (2d Cir. 1996); *see also; Anglo Am. Ins. Group, P.L.C. v. CalFed, Inc.,* 899 F. Supp. 1070, 1073 (S.D.N.Y. 1995) ("New York law

requires insurers to authorize brokers to collect premiums due on insurance contracts that the brokers solicited").

By its terms, Insurance Law § 2121 applies whenever an insurer delivers a policy in New York or issues a policy to an insured represented by a New York broker.  However, even if English law applied to this New York transaction, the result would be the same. As stated in *Minett v. Forrester (1811), 128 Eng.Rep.* 441, 443, 'The broker is agent for the assured, and also for the underwriter; he is agent for the insured, first, in effecting the policy, and in every thing that is to be done in consequence of it; then he is agent for the underwriter as to the premium, but for nothing else; and he is supposed to receive the premium from the insured for the benefit of the underwriter." *See also Maloney v. Rhode Island Ins. Co.,* 115 Cal. App. 2d 238, 245, 251 P.2d 1027, 1031 (1953) (discussing several English cases involving controversies between the insurers and brokers and observing that they uniformly hold that an agency relation exists between them to collect the premium).

Plaintiff has alleged facts that, if true, place this case squarely within the ambit of Insurance Law § 2121. ACE delivered a policy to MEL which MEL procured through a New York broker. MEL alleges that it timely paid the full premium to its New York broker. Under New York law, MEL's payment to the broker constituted pay to ACE. *Globe Indem. Co. v. Gilligan*, 73 Misc. 2d 27, 29, 341 N.Y.S.2d 18, 20 (Dist. Ct. 1973) (Payment of premium to by insured to broker prior to issuance of policy constituted payment to insurer); *Gen. Fire & Cas. Co. v. Mackpat Corp.*, 33 A.D.2d 765, 306 N.Y.S.2d 314, 315 (1969) (a broker receiving payments which it agreed to hold as a credit towards future premiums "is deemed to have received the amounts as the insurer's agent and on its behalf."). Any cancellation by ACE for

7

non-payments was therefore improper. *See e.g. Bruckner Plaza Associates v. Generali Ins. Co. of Trieste & Venice, U.S. Branch*, 172 A.D.2d 408, 409, 568 N.Y.S.2d 786, 787 (1st Dept. 1991).

II.    NEW YORK LAW CONTROLS CANCELLATION OF THE POLICY.

New York law governs the Policy for two reasons. First, the Policy specifically states that it shall be read to conform to law of the state in which it was issued. The Policy was issued in New York.  Second, even if the Policy did not state that it should be read to conform to New York law, New York is the jurisdiction with the most significant relationship to the Policy and under the applicable choice of law rules, its laws therefore control the policy in the absence of a contractual agreement to the contrary.

A.    The Policy's "Conformity with Law" Clause Requires Application of New York Law

The Policy contains a provision entitled "Conformity with Law."  This clause states "If any of the terms of the policy (and forms attached to it) conflict with any laws of the state in which the policy is issued, the policy is amended to conform to such law." Exh. C at Bates No. 0043.  ACE acknowledges in its brief that MEL could establish that the Policy was issued in New York, as it was sent by ACE to a New York broker.  ACE Br. at 19.  Therefore, any provision of the Policy that does not conform to New York law, must be read as if it were amended to conform to New York law.

The Policy provisions regarding cancellation do not conform to New York law. As discussed in detail in Section III, below, New York law contains strict and detailed rules governing when and how a commercial liability insurance policy may be cancelled. The cancellation provisions in the Policy do not remotely conform to these rules. Pursuant to the "Conformity with Law" clause, the Policy's cancellation provisions must therefore be read as if they had been amended to comply with New York law.

8

B.      Even Absent the "Conformity with Law" Clause, the Policy would
        be Governed by New York Law

New York is the jurisdiction with the most significant contacts to the Policy and its laws

therefore govern the Policy.  Of the four jurisdictions with relevant contacts to the Policy, New

York's is the most extensive. The only connection that the English, Hong Kong and

Pennsylvania have to the Policy is that a party to the insurance contract happens to be

headquartered in each of those jurisdictions. New York, by contrast is the place where the

contract was negotiated, procured, paid for and delivered. It is also a jurisdiction in which ACE

is licensed to do business and where it maintains an office. New York's connection with the

Policy is more significant than that of any other jurisdiction.  Accordingly, its law should govern

the Policy.

A federal court sitting in diversity must follow the choice of law rules of the state where

it is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). The parties agree that

New York's choice of law rules apply to this case. (ACE Br. at 13)

New York uses the "center of gravity" approach (also known as the  "grouping of

contacts") as the appropriate analytical framework to choice of law questions in contract cases.

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317, 642 N.E.2d 1065, 1068

(1994).  The place of contracting was traditionally the determinative choice of law factor. The

center of gravity approach adds four other factors to be considered in establishing the jurisdiction

with the "most significant relationship" to the contract. These factors are: the places of

negotiation and performance; the location of the subject matter; and the domicile or place of

business of the contracting parties.  *Id.* 84 N.Y.2d at 318. Where the contract at issue is an

insurance policy, the principle location of the risk being insured becomes the primary, and often

9

determinative, factor. *Id.*  However, where an insurance contract covers risks in multiple

jurisdictions, such as the Policy here, the location of the risk does not provide useful guidance

and the court must examine the broader choice of law factors.

ACE seeks to prevent any such analysis by arguing that *Certain Underwriters at Lloyd's*

*London v. Foster Wheeler Corp.*, 36 A.D.3d 17 (1st Dept 2006), requires this Court to apply

English law to the Policy.  ACE Br. at 14.  In *Foster Wheeler*, the court found that the principle

office of the insured should serve as a proxy for the location of the risk in policies governing

multi-state risks.  However, in *Foster Wheeler* there was a single insured under the policy.  Here

the Policy has two named insured – one domiciled in England and one domiciled in Hong Kong.

The *Foster Wheeler* rule is designed to identify a *single* location with the greatest ties to the

insurance policy.[2]  When there are two named insureds located in different jurisdictions, the

*Foster Wheeler rule* does not provide an answer to the choice of law question.  *See Wausau*

*Business Ins. Co v. Horizon Administrative*, __ F.Supp.2d __, 2011 WL 2945827 (S.D.N.Y. July

21, 2011) (finding *Foster Wheeler* inapplicable where insurance policy contained multiple

named insureds)

Moreover, this Court has rejected the notion that *Foster Wheeler* mandates using the law

of the insured's domicile in policies covering risks in multiple jurisdictions.

> [T]his Court is reluctant to interpret *Foster Wheeler* as imposing a bright-
> line rule. The case is distinguishable because it involved "a large number
> of excess liability insurance policies," even hundreds, and thousands of
> asbestos-related personal injury claims against the insured. Where, as here,
> only one policy and one cause of action is at issue, it is more feasible to
> assess the various states' contacts with the matter.

---

[2]  There can be do doubt that the law of a single jurisdiction must govern the Policy. *Maryland
Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 154 (2d Cir. 2003); *Wausau Business Ins. Co v.
Horizon Administrative*, ___ F.Supp.2d __, 2011 WL 2945827 (S.D.N.Y. July 21, 2011)

*Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 08 CIV. 1316 (HB), 2009 WL 137055 (S.D.N.Y. 2009) *aff'd,* 628 F.3d 46 (2d Cir. 2010) (internal citations omitted). Moreover, where there are *two* named insureds, applying a mechanical rule adopting the domicile of one of them as a proxy for the jurisdiction most intimately concerned with the Policy, is even less warranted.  Instead, as it did in *Lumberman,* the Court should examine all of the factors that are important in determining the center of gravity of an insurance contract.

This Court identified those factors in *Lumberman's Mutual.* They are "the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business." *Id.*  When these factors are examined here, New York is the jurisdiction that is the center of gravity of the Policy. The parties to the policy are equally domiciled in England, Hong Kong and Pennsylvania. ACE, however, is licensed by the New York State insurance Department, maintains an office in New York, and solicits business via brokers and agents in New York. The Policy was placed through two brokers, both of whom where located in New York. Payment for the Policy was made to a broker in New York, by wiring funds to the brokers' New York bank account. The Policy was delivered by ACE to New York.  New York's situs as the place where the Policy was procured, paid for and delivered, coupled with ACE's licensure and presence in New York, makes New York the center of gravity for this contract and makes its law the logical one to apply to the Policy.

Moreover, New York has a legitimate governmental interest in applying it laws to an insurance policy procured, delivered and paid for in New York, through brokers operating in New York. New York, is a major global center for insurance with a significant government interest in ensuring that business around the world continue coming to New York to procure

11

insurance.[3] New York has an interest in regulating and applying its laws to insurance policies that are sold in this state, even when those policies are issued to non-New York insureds and cover risks outside the state. *See, Zeevi & Sons v. Grindlays Bank,* 37 N.Y.2d 220, 227, 371 N.Y.S.2d 892, 333 N.E.2d 168 (finding that New York's status as a world financial center gave it an interest in applying its laws to an international letter of credit between an Israeli company and a Ugandan Bank)

Moreover, it is inequitable for ACE to object to the application of New York law to this Policy. This insurance coverage is marketed by ACE as an International Advantage Commercial Insurance Policy, and is presumably sold by ACE to businesses operating around the world. ACE could have included a choice of law clause in the Policy expressly naming the jurisdiction whose law would governing the Policy. It chose not to. It now seeks to profit from the lack of clarity it created by searching among the various jurisdictions having some connection to the Policy and arguing for the one that it thinks most suits it current interests.  However, MEL and Maclaren Hong Kong obtained an insurance policy in New York that stated that it would conform to the laws of the state of issuance.  ACE should not be permitted to now argue that it can ignore New York law with impunity.

New York is the jurisdiction that the parties to the contract would most reasonably expect to govern the Policy. The Policy was negotiated, paid for and delivered in New York through New York insurance brokers. The Policy states that it would conform to the laws of the place of issuance.  Nothing in the Policy or in the events leading up to its formation would lead the parties to expect that the Policy would be governed by the laws of England, Hong Kong or

---

[3]  *See,* Empire State Development, *White Paper on the Insurance Industry Cluster in New York States*. http://tinyurl.com/62khdtg

Pennsylvania. New York is the center of gravity for this Policy and its law should therefore apply.

III.   THE POLICY WAS NOT CANCELLED IN CONFORMITY WITH NEW YORK LAW

New York law provides strict rules for the cancellation of insurance coverage.  The rules for cancellation of commercial lines insurance, such as the Policy at issue here, are contained in Insurance Law § 3426.  ACE's purported cancellation of the Policy was not in conformity with at the requirements of § 3426 and was therefore ineffective.

ACE's attempted cancellation of the Policy violated numerous provisions of Insurance Law § 3426. Pursuant to § 3426(c), ACE could only cancel the policy for a statutorily permitted reason. [4]  While non-payment would be permissible basis for cancellation (assuming that there actually was a non-payment), the cancellation notice must conform to § 3426 for the cancellation to be effective.  ACE's documents show that it mailed the cancellation notice 13 days before the effective date of the cancellation.  Section 3426(c) requires that the insurer give at least 15 days notice of cancellation.  The notice sent by ACE states that the cancellation was for non-payment, but does not state how much was supposedly owed.  Section 3426(c)(1) requires a notice of cancellation for non-payment to state the amount of premium owed.  Section 3426(h) requires a notice of cancellation to identify all pertinent paragraphs or subparagraphs of § 3426 relied upon for the cancellation. ACE's notice fails to do so.

Pursuant to § 3426(i) a cancellation notice that violates any provision of § 3426 is ineffective. New York courts hold insurance cancellations ineffective for even a single defect. *See e.g. Cherry Hill Textiles, Inc. v. Ins. Co. of Pennsylvania*, 276 A.D.2d 519, 520, 714

---

[4] Since the Policy was a renewal of existing coverage, (and also because it had been in effect for more than 60 days) cancellation is governed by § 3426(c) rather than § 3426(b).

N.Y.S.2d 301, 302 (2000) (finding cancellation ineffective for failure to reference the pertinent subparagraph of § 3426(c)(1)(A) as required by Insurance Law § 3426(h)); *DTC Rest., Inc. v. Pub. Serv. Mut. Ins. Co.*, 302 A.D.2d 349, 753 N.Y.S.2d 892 (2003) (same); *Joseph v. Calvert Ins. Co.*, 183 Misc. 2d 192, 194, 702 N.Y.S.2d 750, 751 (Sup. Ct. 1999) (same). It is indisputable that ACE's cancellation notice violated at least three separate requirements of § 3426. As such it was ineffective to cancel the Policy.

Insurance Law section 3426 applies to this Policy either as incorporated under the Policy's "Conformity with Law" clause, or under New York's choice of law rules. Section 3426 applies to all "covered policies" other than those excluded under § 3426(l)(2)).  A covered policy is defined as "commercial risk insurance, professional liability insurance or public entity insurance." § 3426(a)(1). The Policy is clearly a commercial risk policy and is therefore a "covered policy." ACE's argument that the subsection (l)(1) demonstrates an intention by New York to exclude the Policy misinterprets the meaning of that subparagraph. Subparagraph (l)(1) does not exclude any "covered polices" from the scope of § 3426. It simply expands the protections of § 3426 to policies that might otherwise not be covered – i.e. multi-state risk policies issued in New York to a New York company that is governed by some other state's laws. Nothing in subsection (l)(1) exempts a commercial lines policy issued in New York and subject to New York law from the requirements of § 3426.

There can be no serious dispute that ACE's cancellation notice failed to conform to New York law. A defective cancellation notice renders the purported cancellation ineffective pursuant to Insurance Law § 3426(i). Accordingly, ACE's assertion that it cancelled the Policy on July 10, 2006, is legally untenable. Its motion to dismiss the Complaint on the grounds of cancellation should therefore be denied.

14

IV.   ACE HAS NOT ESTABLISHED THAT ITS CANCELLATION OF THE POLICY WAS EFFECTIVE
      UNDER ENGLISH LAW

Pursuant to both the Policy's Conformity with Law clause and New York's choice of law rules, New York law applies to this Policy. ACE nevertheless argues that English law should apply. ACE's argument is based solely upon the ground that one of the two named insured's in the Policy has its principle office in England.  ACE. Br. at 14.  A discussed in Point II above, applying English law to the Policy would be inconsistent with the Policy's Conformity with Law clause (since the Policy was not issued in England), and would be contrary to New York choice of law principles. Putting aside the weakness of ACE's claim that English law applies to the Policy, ACE's motions fails to establish that the English law would give effect to its 2006 cancellation.

As an initial matter, if ACE received payment for the Policy (either in fact or by operation of law through payment to the broker), then its subsequent cancellation for non-payment of the Policy would be ineffective under English law. *See, Zeller v. British Caymanian Insurance Company Ltd.* [2008] UKPC 4. (Holding that insurer's notice of cancellation "was invalid and of no legal effect" where it was based upon insurer's erroneous assertion that insured had breached a policy warranty).

Even if ACE did not actually or constructively receive the premium, it has failed to establish that its cancellation notice would be valid under English law. ACE has attached documentation showing that it sent a notice of cancellation addressed to Maclaren Europe Ltd, 4 Testa Place, Norwalk, CT 06554.  MEL never maintained an office in Norwalk Connecticut and ACE has offered no evidence showing that this misaddressed letter was actually delivered. There is no indication that the cancellation notice was sent to MEL or to Maclaren Hong Kong at their

actual addresses or to their broker. The English cases cited by ACE do not establish whether the single mailing by ACE to an incorrect address would be valid notice of cancellation.

In *Pacific & General Insurance Co Ltd. v. Richard Dennis Hazell*, 1991 Folio No. 359 (ACE B. at 15) there no issue about notice given by the Insurer.  The case turned on whether or not insurance brokers acting on behalf of an insolvent company had been entitled to seek the cancellation of a policy from reinsurers (the brokers having paid the premium on behalf of their client).  The High Court found that the cancellation was effective because the provisional liquidator had clearly stated that no funds would be made available to pay the premium in future. This was a repudiation by the insolvent company (through its Provisional Liquidator).  The point about notice relied upon in ACE's brief relates to what a reinsurer is required to do to accept that repudiation.  It says nothing about the effectiveness of ACE's cancellation.

The Court of Appeal decision in *Arash Shipping Enterprises Co. Ltd v. Groupama Transport*, [2011] EWCA Civ 620 (Ace Br. At 15) is also not helpful to determining the effectiveness of ACE's notice of cancellation.  There was no issue in that case as to the form or method of cancellation. The dispute was whether insurers were able to terminate coverage because of European Union Regulations that imposed sanctions on Iranian persons and entities. The Court of Appeal held that the insurer was so entitled on the facts of the case.

The case of *Micro Design Group Ltd. v. Norwich Union Ins. Ltd.* [2005] EWHC 3093 (ACE Br. At 16) does not discuss the effectiveness of a cancellation notice. The issue in that case was whether an insurer could cancel a policy based upon the failure of the insured to disclose that its prior coverage had been cancelled for non-payment.  The insured argued, unsuccessfully, that its failure to disclose the previous cancellation should be forgiven because there had been a defect in the notice of cancellation.  The court found that regardless of any defect in the

cancellation notice, the parties had treated the insurance as cancelled and the insured should have therefore disclosed the prior cancellation on it application. There was no discussion of whether a notice sent to an incorrect address was effective under English law.

## CONCLUSION

For the reasons stated herein, the Court should deny Defendant's Motion to Dismiss the Complaint.

Dated:  New York, New York
        October 7, 2011

CLAYMAN & ROSENBERG LLP
ATTORNEYS FOR PLAINTIFF


By:     _____/s_____
        Paul S. Hugel (PH4749)
        305 Madison Avenue - Suite 1301
        New York, New York 10165
        (212) 922-1080  phone
        (212) 949-8255  facsimile