ATTORNEYS AT LAW

125 BROAD STREET, 39TH FLOOR   NEW YORK, NY 10004-2400

www.sedgwicklaw.com   212.422.0202 *phone*   212.422.0925 *fax*

# Sedgwick LLP



RECEIVED APR 20 2012 U.S. DISTRICT JUDGE S.D.N.Y.

*J. Gregory Lahr*
(212) 898-4014
gregory.lahr@sedgwicklaw.com

April 19, 2012

*Via FedEx*
Honorable Harold Baer
United States District Court
Southern District of New York
500 Pearl Street, Chambers 2230
New York, New York 10007

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/3/12

    Re:    *Maclaren Europe Limited v. ACE American Insurance Company*
           Case No. 11-cv-04688-HB
           Our File No.: 1560-007753

Dear Judge Baer:

We represent ACE American Insurance Company ("ACE") and are writing respectfully in furtherance of our letter to the Court dated March 16, 2012, and to provide the Court with a copy of the transcript from the deposition of the corporate designee produced by Plaintiff Maclaren Europe Limited ("MEL"). It remains ACE's position that MEL has not satisfied its obligation under Federal Rule 30(b)(6), and below we alert the Court to some of the more notable instances where MEL's witness could not answer a question pertinent to the issues in this case and required by the deposition notice:

    Page 23: unaware of MEL's directors since its incorporation;
    Pages 38-39: unaware of who the MEL chief financial officer reported to;
    Pages 53-55: testifying about the relationship between Acela and MEL, but unaware of the details regarding the contractual relationship;
    Pages 62-64, 74: unaware of the ownership of MEL by Spring Meadows, or the transfer of the ownership to Maclaren Distribution, or who owned MEL before Spring Meadows;
    Page 65: admitting that he only scanned the 30(b)(6) deposition notice on his flight to New York, and had not reviewed it "in great detail";
    Pages 68-69, 103-05, 200: admitting that his answers in the deposition would be based only on what he had "gleaned through [his] time with MEL," that he reviewed MEL's document production for the first time the day before the deposition; and that he did not know who was involved in gathering MEL's documents;
    Page 86: admitting that, prior to signing his sworn Declaration dated October 6, 2011, he did not review any documents or speak to anyone regarding who the owners, directors, and officers of Maclaren USA ("MUSA") were;
    Page 88: unaware of MEL's corporate secretaries;
    Pages 93-94: unaware of the details of the relationship between MEL and Dory Ventures (which later discovery indicates is a company that provided, among other things, design services to MUSA, and is another Farzad Rastegar company according to the Connecticut Secretary of State);

NY/849976v1

      Pages 97-99: unaware of the details of Helen Lynch, who, according to documents produced by MEL, appears to have been the primary person responsible for procuring MEL's liability policies;

      Pages 101-02: unaware of Acela's involvement in procuring liability policies for MEL;

      Page 112: unaware of whether there was a brokerage contract between MEL and the retail broker, Sahgner Risk Managers ("SRM");

      Pages 112-13, 123, 158-59: unaware of whether MEL authorized SRM to submit an insurance application for the subject ACE policy, or if SRM was MEL's retail broker in 2005 and 2006;

      Pages 114-16, 120: unaware of whether there was a contract between MEL and the wholesale broker, Program Brokerage Corporation ("PBC"), or what PBC did for MEL;

      Page 119: unaware of whether Tom Zarem, MUSA's chief financial officer, had authority to procure insurance for MEL;

      Pages 127-31: admitting that he had never reviewed the ACE insurance policies for 2004-05 and 2005-06 before preparing for the deposition, and unaware of who paid the premiums for those policies;

      Page 148: unaware of the details regarding a payment from MEL to MUSA for the 2004-05 insurance policy;

      Page 155: unaware of whether MEL's $45,000 payment to SRM in February 2006 was given to PBC or ACE;

      Pages 165-66, 200: unaware of whether MEL received the 2005-06 ACE policy or the subject ACE policy;

      Pages 172-73: unaware of why MEL employee Mark Woollven was asking Tom Zarem about insurance coverage for a new product line during the subject ACE policy period;

      Pages 175-76: (for background, explaining Acela's location within the same office as MEL);

      Pages 178-79: unaware of the details of an email in which Rastegar is inquiring about insurance procured by MEL;

      Page 187-88: unaware of why Woollven is asking permission from John Shad, the Director of Acela, to procure insurance for MEL;

      Pages 194-96: unaware of who gave Woollven authority to procure insurance for the 2007 policy period;

      Pages 203-05: unaware of whether MEL sought to make a payment to ACE after receiving a fax from MUSA with an attachment indicating that the earned premium for the subject ACE policy was past due.

As set forth above, and in ACE's prior letter to the Court, we respectfully request that the Court order MEL to produce another witness who can testify regarding the subjects of examination in ACE's deposition notice.

Respectfully submitted,

/s/ J. Gregory Lahr

J. Gregory Lahr
Sedgwick LLP

cc:     Paul Hugel, Esq. (via email)

*[Handwritten note: "6 AM is fine for me and your deposition notice was far too broad / catch on with it! SO ORDERED: Harold Baer Jr, U.S.D.J. 5/2/12"]*

Endorsement:

    TOAMA is fine with me and your deposition notice was and is far too broad - lets get on with it!