# Sedgwick LLP

ATTORNEYS AT LAW

125 BROAD STREET, 39TH FLOOR   NEW YORK, NY 10004-2400

www.sedgwicklaw.com   212.422.0202 *phone*   212.422.0925 *fax*

*J. Gregory Lahr*
*(212) 898-4014*
*gregory.lahr@sedgwicklaw.com*

May 3, 2012

*Via Facsimile*

Honorable Harold Baer
United States District Court
Southern District of New York
500 Pearl Street, Chambers 2230
New York, New York 10007

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/10/12

Re: *Maclaren Europe Limited v. ACE American Insurance Company*
Case No. 11-cv-04688-HB
Our File No.: 1560-007753

Dear Judge Baer:

We represent ACE American Insurance Company ("ACE") and are writing respectfully to seek clarification on the Court's order issued today relating to the corporate designee produced by Maclaren Europe Limited ("MEL").

The Court has advised that MEL's witness is fine with the Court. However, we are uncertain as to the effect of this ruling, and whether it constitutes an order following a motion under Fed. R. Civ. Proc. 37. If it is not such an order, we seek clarification as to whether ACE may file a motion under Rule 37 to preserve the issues raised to the Court; if it is such an order, we seek clarification as to whether MEL will be precluded from offering evidence at trial as to the subjects on which its corporate designee could not provide testimony. Clarification of the Court's order also is pertinent for the following reasons.

Thus far, discovery indicates that MEL may have used Sahgner Risk Managers ("SRM") as its retail broker, and Program Brokerage Corporation ("PBC") as its wholesale broker, to procure ACE policies for the 2005-2006 and 2006-2007 policy periods. Discovery also indicates that MEL's corporate affiliate, Maclaren USA ("MUSA"), was involved in the procurement of these policies. Although MEL has represented that MUSA and MEL are entirely separate entities with no overlap, there are indications that Farzad Rastegar was involved in MEL's operations, while being an owner of MUSA. The subject policy covering MEL for 2006-2007 was cancelled in July 2006 for non-payment of premium, and ACE sent the cancellation notice to MUSA and PBC. MEL's claim in this litigation is that the policy cancellation is ineffective because, *inter alia*, it allegedly sent a premium payment to SRM in February 2006, and the cancellation notice was not received by MEL, and MEL had no notice of the cancellation of the subject policy.

It is based on the above foundational facts that ACE sought to depose a MEL witness on the subjects of examination set forth in the corporate designee deposition notice, which included: (1) the ACE policy at issue and prior ACE policies covering MEL; (2) MEL's insurance procurement practices during the relevant time period; (3) the corporate structure of MEL during the relevant time period; (4) the ownership and control of MEL during the relevant time period; (5) the relationship between MEL and MUSA, as well as

NY/857550v1

Honorable Harold Baer
May 3, 2012
Page 2

the other corporate affiliate Maclaren Hong Kong (which also was covered by the ACE policy); (6) MEL's relationship with SRM and PBC, and relevant communications with these brokers; (7) the cancellation notice issued by ACE; and (8) the alleged payment made by MEL for the ACE policy.

MEL's witness, however, could not provide testimony on these subjects and, therefore, we are uncertain as to what MEL's position is on the subjects. For example, we do not know whether MEL agrees that SRM and PBC were its brokers, or whether MUSA was authorized to procure the ACE policies on MEL's behalf, or what Mr. Rastegar was authorized to do vis-à-vis MEL's operations. We similarly do not know what Acela, Ltd was authorized to do for MEL, despite that MEL's documents indicate that Acela employees were involved in insurance procurement activities for MEL. We also do not have a MEL witness confirming whether the February 2006 transfer of funds to SRM was for the purpose of paying for the subject ACE policy. These are integral issues in the litigation about which MEL has not set forth its position as it is required to do under the rules of discovery, despite that such information is reasonably available to it.

Accordingly, we respectfully request clarification on the effect of the Court's ruling today and the evidence that MEL may, or may not, be permitted to offer in summary judgment proceedings or at trial, or whether ACE may file a formal motion under Rule 37.

Respectfully submitted,

/s/ J. Gregory Lahr

J. Gregory Lahr
Sedgwick LLP

cc:     Paul Hugel, Esq. (via email)

NY/857550v1

[Handwritten annotations by the judge:]

(1) My ruling reflects my full reach about.
37 motion so I don't know what you all [are] talking about.

(2) What I mean by full [ruling] means I don't see the need for more time a) because the answers appear not to show there r b) because such which new on the discovery track may make my point. I'm not any [good] in party [for] motion w/ DFSO.

(3) I want me to be no more letters proof track — correct w/th[is] topic

(SO) ORDERED: [signature]
Harold Baer, Jr., U.S.D.J.
Date: 5/9/12

Endorsement:

1. My file reflects no Rule 37 motion so I don't really know what you are talking about.

2. What I mean by "fine" means fine I don't see the need for more from him (a) because he doesn't have all the answers and appears not to have them and (b) because you have other discovery tasks which may help.

3. Parties in my Part may make motions of any sort any time in concert with the PTSO.

4. There are to be no more letters on this topic - Good Luck.