IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MACLAREN EUROPE LIMITED,<br><br>            Plaintiff,<br><br>    -against-<br><br>ACE AMERICAN INSURANCE COMPANY,<br>a/k/a ACE USA,<br><br>            Defendant. | Index No.: 11-cv-4688 (HB) |

**DEFENDANT'S COUNTER-STATEMENT OF MATERIAL FACTS**
**UNDER LOCAL RULE 56.1**

 

Joseph K. Powers (JP 5504)
J. Gregory Lahr (JL 9969)
Thomas R. Orofino (TO 6171)
SEDGWICK LLP
125 Broad Street – 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
*Attorneys for Defendant*
*ACE AMERICAN INSURANCE COMPANY*

NY/959999v1

Defendant, ACE American Insurance Company ("ACE") (incorrectly sued herein as "ACE American Insurance Company, a/k/a ACE USA"), by its attorneys, Sedgwick LLP, respectfully submits this Counter-Statement of Material Facts under Local Rule 56.1.

## COUNTER-STATEMENT OF MATERIAL FACTS

1. Plaintiff Maclaren Europe Limited ("MEL") is an English corporation with its primary place of business in Northhamptonshire, England.

   **Response:** ACE agrees this is undipusted.

2. Between February 2005 and April 2006, Indebir Sahni (a/k/a Rana Sahni) was an insurance broker doing business in the State of New York.

   **Response:** ACE agrees this is undisputed.

3. Between February 2005 and April 2006, Indebir Sahni ("Sahni") operated as an insurance broker through his companies, I.S. Sahni, Inc. and Sahgner Risk Managers, LLC.

   **Response:** ACE agrees this is undisputed.

4. In 2006 both I.S. Sahni and Sahgner Risk Managers LLC were based in the State of New York.

   **Response:** ACE agrees this is undisputed.

5. AMW Ougheltree & Associates LLC ("Ougheltree") acted as a sub-broker for Sahni in procuring the 2004 policy for MEL and Maclaren Hong Kong Ltd.

   **Response:** ACE agrees this is undisputed.

6. Ougheltree informed ACE in 2004 when applying for insurance, that MEL, Maclaren Hong Kong and Maclaren USA were separate companies.

**Response:    Although ACE disputes that such a statement was specifically made by Ougheltree, it agrees that such a conclusion could be inferred from the documents submitted to ACE.**

7.    The application for insurance submitted by Ougheltree in 2004 identified MEL's address in England, Maclaren Hong Kong address in China and Maclaran USA's address in Connecticut.

**Response:    ACE agrees that the subject addresses were contained in the insurance application submitted by Ougheltree, but contends that the application specifically listed MEL as the first named insured and provided the mailing address for MEL as "Tom Zarem, 4 Testa Place, South Norwalk CT 08854."**

8.    Ougheltree informed ACE that it was acting as a sub-broker for another broker in submitting the application for insurance in 2004.

**Response:    Although ACE disputes that such a statement was specifically made by Ougheltree, it agrees that such a conclusion could be inferred from the documents submitted to ACE.**

9.    The application for insurance submitted to ACE by Ougheltree in 2004 identified I.S. Sahni, Inc. as the producer.

**Response:    ACE agrees that the application for insurance identifies I.S. Sahni Inc. in the box entitled "Producer's Signature," but it also identifies an entity named "Scirocco Financial Group, Inc." of Hasbrouck Heights, NJ, in the box entitled "Producer."**

NY/959999v1

10. ACE understands the term "producer" to be synonymous with "broker" in connection with the procurement of insurance.

**Response:   ACE agrees that, in certain instances, a producer also may be a broker in connection with the procurement of insurance.**

11. In March 2004, ACE agreed to issue liability insurance covering only MEL and MHK ("the 2004 Policy").

**Response:   ACE agrees that the binder it issued on March 11, 2004, listed MEL and MHK as the Named Insureds.**

12. ACE incorrectly issued the 2004 Policy with Maclaren USA as an insured, but in September 2004, corrected the policy to list only MEL and Maclaren Hong Hong as named insureds.

**Response:   ACE disputes whether the issuance of the Policy in September 2004 with MUSA as one of the named insureds was the result of a "mistake" on its part, but agrees that it amended the policy in September 2004 to delete MUSA as a named insured on a prospective basis.**

13. The 2004 policy was renewed by ACE in March 2005.

**Response:   ACE agrees this is undisputed.**

14. Sahni was MEL's broker for the renewal of the policy in 2005 and 2006.

**Response:   ACE agrees this is undisputed.**

15. For the renewal of the policy in 2005 and 2006, Sahni used Program Brokerage Corp as his sub-broker.

> Response:    ACE agrees this is undisputed.

16. In 2005 and 2006, Program Brokerage Corp was an insurance broker operating in the State of New York.

> Response:    ACE agrees this is undisputed.

17. Program Brokerage Corp, informed ACE that it was acting on behalf of another broker in requesting renewals of the policy in 2005 and 2006.

> **Response:    Although ACE disputes that such a statement was specifically made by Ougheltree, it agrees that such a conclusion could be inferred from the documents submitted to ACE.**

18. The 2006 renewal application submitted by Program Brokerage Corp to ACE identified Sahgner Risk Managers LLC as the agent for the insured.

> Response:    ACE agrees this is undisputed.

19. MEL wired $45,000 to Sahnger Risk Manager's on February 22, 2006.

> Response:    ACE agrees this is undisputed.

20. The money wired by MEL to Sahgner Risk Managers on February 22, 2006 was for payment of the premium on the renewal of the ACE policy due to expire on March 10, 2006.

> **Response:    ACE disputes that the money wired by MEL to Sahgner Risk Managers on February 22, 2006, was specifically ear-marked for the renewal with ACE of the ACE policy due to expire on March 10, 2006, as evidenced by the fact that MEL declined to accept the renewal quotes offered by ACE on March 7 and 8, 2006, and**

NY/959999v1

subsequently "shopped" the risk to other insurers before accepting the original ACE quote on April 10, 2006.

21.     ACE delivered the 2006 policy to Program Brokerage Corp in New York.

**Response:     ACE agrees that it mailed the 2006 Policy to PBC at its address in New York.**

22.     The cancellation notice sent by ACE did not state the amount of money due on the policy.

**Response:     ACE agrees that the cancellation notice does not indicate the amount of outstanding premium owed on the 2006 Policy.**

23.     The cancellation notice sent by ACE provided less than 15 days notice of cancellation.

**Response:     ACE agrees that the cancellation notice provided thirteen days notice of the impending cancellation, as required by the 2006 Policy.**

24.     MEL did not receive actual knowledge of the cancellation notice sent by ACE until 2009.

**Response:     ACE has no basis to agree or disagree with this statement, but states that the cancellation notice was sent to the Connecticut mailing address appearing in the Policy and was received by MUSA, according to its own business records.  In addition, MUSA's chief financial officer, Tom Zarem, testified that his normal procedure would have been to send such a notice to MEL.**

In addition to the above counter-statement, ACE relies upon and incorporates by reference its Rule 56.1 Statement of Material Facts filed on June 13, 2012.

Dated:  New York, New York
         June 25, 2012

        Sedgwick LLP

        /s/ J. Gregory Lahr
        Joseph K. Powers (JP5504)
        J. Gregory Lahr (JL9969)
        Thomas R. Orofino (TO6171)
        125 Broad Street, 39th Floor
        New York, NY  10004-2400
        Telephone: (212) 422-0202
        Facsimile: (212) 422-0925
        *Attorneys for Defendant*
        *ACE AMERICAN INSURANCE COMPANY*