IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MACLAREN EUROPE LIMITED,

        Plaintiff,

    -against-

ACE AMERICAN INSURANCE COMPANY,
a/k/a ACE USA,

        Defendant.

Index No.: 11-cv-4688 (HB)

## DECLARATION OF PATRICIA THOMPSON

    PATRICIA S. THOMPSON, pursuant to 28 U.S.C. § 1746(2), declares under penalty of perjury that the following is true:

    1.    I am a Home Office Referral Underwriter and Assistant Vice President for Foreign Casualty at ACE American Insurance Company ("ACE") in Philadelphia, Pennsylvania. I have personal knowledge of the facts stated herein, except where I have indicated that my testimony is based upon information and belief.

    2.    I submit this Declaration in support of ACE's opposition to Plaintiff's motion for summary judgment.  Further background is set forth in my prior Declaration dated June 13, 2012.

    3.    Certain business divisions within ACE USA had a Broker/Company Agreement with Program Brokerage Corporation ("PBC") effective April 1, 2003.  A true and correct copy of the Agreement is attached as Exhibit I to the Declaration of William P. DeVito dated June 22, 2012. According to the Agreement on page 2, it expressly applied only to the business divisions that subscribed to it as listed on page 8 of the Agreement, and Exhibit A of the Agreement.  ACE

American Insurance Company was not a signatory to this Agreement, and it did not apply to the International Advantage policies that were underwritten by ACE.

4. PBC did not act as ACE's agent with respect to the International Advantage policies that PBC brokered on behalf of MEL. PBC had no apparent or actual authority from ACE to bind it to any insurance coverage.

So Sworn this 25 day of June, 2012

I declare under penalty of perjury that the foregoing is true and correct.

Patricia S. Thompson

# EXHIBIT A



**ace usa**

# Agency/ Company Agreement

We, the companies designated below, are parties to this Agreement and are collectively referred to as "We, Us or Our."

Name of Agent: Program Brokerage Corporation

Address: 1065 Avenue of the Americas
15th Floor
New York, NY 10018-2506

Code: 271631

is a party to this Agreement on behalf of itself and the entities specified in Exhibit "C" and are referred to collectively as "You or Your."

ACE0000154



**ace usa**

We, the insurance companies subscribing to this Agreement do so for the business divisions within ACE USA as specified in Exhibit A.

## I.   Our Relationship

### A.   Authority

You may submit information to Us and request a premium quotation from Us for the business divisions specified in Exhibit A. You may request Us to provide coverage for a risk. If We agree to provide a premium quotation and/or to provide coverage, You may communicate the terms of the quotation and/or coverage to the insurance applicant. You are not authorized hereunder to bind coverage or to make representations on Our behalf and You have no authority to issue policies or endorsements unless We authorize You to do so by written, duly executed addendum to this Agreement. You are not authorized to use the name, logo, or service marks of ACE or any of its affiliates in any advertising and/or promotional materials without Our prior review and written consent which shall be obtained for each separate use of the ACE name, logo, or service marks.

### B.   Status

You are an independent contractor and not Our employee. Nothing in this Agreement shall be interpreted as creating an employer/employee relationship between You and Us.

## II.   Your Duties

### A.   Collection of Premium

1.   For business You place with Us, unless otherwise specified within any separate Agreement, in accordance with our procedures You will collect, account for, and pay premiums on business You write. You will be responsible for collecting all premiums (including premiums developed by audits or retrospective or other adjustments) and agree to pay Us all premiums and any other monies on business that You solicit and is accepted by Us.

You must pay Us the premium even if You do not collect it from the policyholder. All credit extended to any policyholder or other payor by You will be at Your sole risk. Failure by You to report or pay premium when due or report discrepancies to Us will be considered as Your indication to Us that the policy should be cancelled by Us. If You fail to pay Us the full amount of premium owed, a copy of the direct notice of cancellation to the insured will be sent to You and the direct notice of cancellation will be sent by Us to the policyholder and Your account will be charged with any earned premium.

2.   Premium on binders, policies, endorsements or cover notes issued at Your request are not subject to flat cancellation and You accept full responsibility for payment to Us of all premiums on all business that is accepted by Us. You are entitled to credit on any return premium due to cancellation after written proof of satisfactory cancellation has been received by Us; however, no credit for any return premium due to cancellation shall be allowed for any period during which coverage is effective under any contract provisions.

ACE0000155



**ace usa**

3.  In the event that Our policies billed by You are cancelled, We agree to remit to You all previously paid unearned net premiums that are owed to insureds. You, in turn, will reimburse the insureds the unearned gross premium.

4.  In the event that policies We bill directly to insureds are cancelled, We will reimburse the insureds the unearned gross premium. Your unearned commission then becomes due and payable to Us.

5.  You will receive commission on direct billed premium that is received by Us and on premium that You collect and remit to Us. If, in Our sole discretion, We determine that it is necessary for Us to seek payment of earned premiums through direct or third party collection, You will forfeit all rights to commission on such items.

6.  If any additional premiums developed by audit, reporting policies, retrospective or other adjustments cannot be collected by You, We may undertake direct collection of such premiums. If We choose to undertake direct collection, then You shall not be responsible for such premiums provided that:

    (a) You provide evidence satisfactory to Us that You have made a reasonable and demonstrable effort to collect such premiums and have been unsuccessful in doing so; and

    (b) You notify Us in writing by certified mail or facsimile within 45 days of Our initial date of billing of Your inability to collect such premiums. However, if You do not notify Us within 45 days of Our initial date of billing of Your inability to collect such premiums, then You are responsible for payment of such premiums to Us.

7.  If You refund any premiums, You agree to pay Us the commission(s) We originally paid You or credited to Your account because of such premiums. The rate of the commission refund shall be the same as the rate at which the commissions were originally paid.

8.  We may reduce the amount of commissions that You may retain or that We are to pay You by any amounts of money that You owe Us. The amount of the reduction or set off may include any expense that We incur because of or related to attachment(s) by third parties of monies that We owe You and any payments that We make as a result of such attachment(s).

9.  You agree to notify Us of any acquisition(s) or divestiture(s) within 90 days of the date of such an event.

**B.   Reporting and Accounting**

1.  You will promptly notify Us in writing if You receive notice of any claims, suits or losses under Our policies. You will cooperate with Us in the investigation, adjustment, settlement and payment of claims. Except for Accident & Health business, You will also assist Us in the collection of deductibles from insureds.

2.  All premiums, including return premiums, received by You for business written by Us, whether before or after termination of this Agreement are Our property. You will hold such premiums in a fiduciary capacity for Us. This fiduciary relationship and Our ownership of the premiums will not be affected by Our books showing a creditor - debtor relationship, the amount of balances at stated periods, or Your retention of commissions. Further, all premium monies collected, net of allowable deductions shall be held in an escrow account for Us until payment of all such amounts is made to Us. You shall not co-mingle any premium funds with any personal or business accounts, other of your funds, or funds held in any other capacity. You are prohibited from taking any offsets for monies that are required to be deposited in an escrow account.

ACE0000156



**ace usa**

3. You shall procure promptly as needed, all payroll and other reports or records on insurance contracts written on an audit or reporting basis. We may procure such reports or records directly from the insured if not received in a timely manner from You.

4. You do not have authority to flat cancel an insurance contract without Our prior approval. Earned premium shall be computed and charged on every contract cancelled after inception in accordance with the cancellation provisions of such contract. You are responsible for payment to Us of the full amount of any earned premium due Us.

5. You will keep complete records and accounts of all transactions pertaining to insurance written under this Agreement. Such records and accounts are to be kept current and readily identifiable. We will have the right to examine Your accounts and records and make copies of them. We may make such examinations as often and at such times as we determine to be reasonable, either while this Agreement is in effect or after it terminates.

### C.   Indemnification

1. You agree to defend, indemnify, and hold Us harmless from any loss or penalty caused by any of the following provided that We have not contributed to or compounded the error causing the loss or penalty:
   * any violation or alleged violation of law governing business transacted under this Agreement committed by You;
   * any unauthorized advertisement, publication, or statement by You.

## III.   Suspension

If You fail to comply with any terms of this Agreement, We may suspend or otherwise limit Your ability to place business with Us or any authority We may have granted to You. All of these result in automatic termination. Such suspension or limitation will not affect any of Your other rights or obligations under this Agreement.

## IV.   Our Duties

(A) We agree to defend, indemnify, and hold You harmless from any loss or penalty caused by any of the following provided that You have not contributed to or compounded the error causing the loss or penalty:
   * Our errors or omissions in processing direct billed business to either You or the customer;
   * Any loss prevention program We sponsor;
   * Our failure to comply with federal or state law, including the Fair Credit Reporting Act, Federal Truth in Lending Law, Fair Credit Billing Act and privacy law; or
   * Your use of any form supplied or approved by Us or otherwise following Our instructions or procedures.

(B) In exchange for Our conditional indemnification set forth above, You agree to notify Us promptly of any claim against You. You also agree to cooperate with Us in any investigations, settlement or defense that We determine to be appropriate, including the selection and/or approval of counsel retained to defend any such claim.

ACE0000157



**ace usa**

## V.  Licensing

(A)  You warrant to Us that You are properly licensed as an insurance agent for all insurance proposals and/or applications submitted by You, and in all appropriate jurisdictions for business submitted; and that such license is valid and in force at the time of commencement or renewal of any insurance contract submitted and accepted hereunder, and that any sub-produced business is placed through properly licensed sub-producers who are appointed where required. You will immediately notify Us of any notice of intent to suspend, revoke, or limit Your license(s).

(B)  If You have a surplus lines license in Your name for and on Your behalf as shown on the face of this Agreement, You warrant to Us that such license is valid and in force at the time of commencement or renewal of any insurance contract submitted and accepted hereunder which requires such license. You agree to comply with the surplus lines laws of all applicable jurisdictions and all other laws and regulations governing the conduct of business which is within the scope of this Agreement, including but not limited to requirements pertaining to countersignatures, the filing of affidavits with regulatory authorities and the payment of surplus lines taxes.

(C)  You agree to indemnify and hold Us harmless from any and all costs, claims, losses or damages of any nature whatsoever, including reasonable attorneys' fees and/or costs, that result from Our reliance upon the representations contained in the preceding subsections (A) and (B), or as may be incurred by Us directly or indirectly as a result of any violation or alleged violation of any law or regulation by You or Your sub-producers.

## VI.  Ownership of Business

While this Agreement is in effect, We will not use the records of any policy produced by You to solicit insureds for renewals, other lines of insurance or other products or services except on Your behalf. We will display Your name on all declarations and bills relating to policies produced by You.

## VII.  Compensation

For Your services under this Agreement, compensation will be paid in accordance with the terms of each invoice on business which You submit to Us and which We accept. You may deduct Your commission from the premiums You collect for Us. If We bill insureds directly, We will pay You Your commission after We receive premium payment from the insured.

Your commission will be negotiated on a policy risk by policy risk basis.

## VIII.  Assignment or Change of Ownership

You agree to notify Us in writing within seven (7) days of any sale, transfer or other substantial change of Your ownership or management.You may not assign, transfer, encumber or otherwise dispose of this Agreement or any interest in this Agreement without Our written consent.

## IX.  Termination

(A)  *Automatic Termination.* This Agreement will automatically terminate:

  * If Your license as an insurance agent is suspended or terminated;

ACE0000158



**ace usa**

- You are unable to pay Your debts as they mature; You make an assignment for the benefit of creditors; Your agency is dissolved; a receiver or liquidator is appointed for You or a substantial part of Your property; or insolvency, bankruptcy, reorganization, arrangement or similar proceedings are instituted by or against You;
- You misappropriate any of Our funds or property.

(B)  *Termination For Cause.* We may terminate this Agreement immediately by sending You written notice if You violate any provision of this Agreement.

(C)  *Termination Without Cause.* Either party may terminate this Agreement without giving any reason by giving the other party at least 90 days prior written notice.

(D)  *Continuing Duties After Termination:*

1. Following the termination of this Agreement, You will continue to be obligated to fulfill Your duties relating to policies produced by You. If We choose, We may relieve You of some or all of those duties and obligations; and if We so elect, We will instruct You accordingly in writing.

2. If You have properly accounted for and paid all amounts that You owe Us and continue to make timely accountings and payments, all records relating to policies which You produced will belong to You. If You request in writing, We will give You a list of Your customer billed policyholders and the expiration dates of their policies.

3. If You have not properly accounted for and paid all amounts You owe Us, all records relating to policies You produced will belong to Us. In such event, You will gather such records together at Your offices and make the records available to Us. We may service the policies directly or dispose of the records in any commercially reasonable manner. We may collect premiums directly from any policyholder who has not paid You.

4. If We sell the records and the amount We receive exceeds the amount You owe Us and the expenses involved, We will pay You the excess. If the amount You owe Us and the expenses exceed the amount We receive in disposing of the records You will remain liable for the excess.

5. If You give Us collateral which We determine to be adequate in form and amount to secure the amount that We estimate You owe and will owe Us, We will return the records and give You the ownership of the expirations.

## X.   No Waiver

If You or We fail to insist on strict compliance with this Agreement or fail to exercise any right under this Agreement, such failure will not be a waiver of any right or any provision of this Agreement; nor will such failure prevent any party hereto from insisting on strict compliance with this Agreement or exercising the right in the future.

## XI.   Arbitration

It is understood that this Agreement is made in good faith, and should a difference of opinion or interpretation of this Agreement arise which cannot be resolved amicably between Us, such differences or interpretations shall be submitted to the decision of a Board of Arbitration composed of two (2) arbitrators and an umpire meeting in Philadelphia, Pennsylvania.

ACE0000159



**ace usa**

The members of the board of arbitration shall be disinterested active or former officials of insurance or reinsurance companies or agencies. Each party will appoint an arbitrator, and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within sixty (60) days after being requested to do so by the claimant, the latter shall also appoint the arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four (4) weeks after their nominations, each of them shall name three (3), of whom the other shall decline two (2) and the decision shall be made by drawing lots. The claimant shall submit its initial brief in twenty (20) days thereafter, and the claimant may submit a reply brief within ten (10) days after filing of the respondent's brief.

The board shall make an award with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its award in writing based upon a hearing at which evidence may be introduced without following strict rules of evidence but in which cross-examination and rebuttal shall be allowed. The board shall make its award within sixty (60) days following the termination of hearings unless the parties consent to an extension. A decision by the majority of the members of the board shall become binding upon all parties to the proceeding.

Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceeding shall be allocated by the board.

## XII.  Full Agreement

This Agreement is the full Agency Agreement for the business divisions that are parties to this Agreement between You and Us. Any previous agreement between You and Us, except for any Agreements in which You are designated as a General Agent for Program business on Our behalf, whether oral or written, is now void. This Agreement may be amended only in writing and the amendment must be signed by You and Us. This agreement inures to the benefit of the parties to this Agreement and there shall be no third party beneficiaries with respect to this agreement.

## XIII.  Conformance to Law

If any provision of this Agreement is in conflict with applicable law, that provision will be considered amended to the minimum extent necessary to comply with the law. The remaining provisions will not be affected.

## XIV.  Privacy of Information

1.  In compliance with federal and state regulations, You may disclose nonpublic personal information to ACE Companies in the course of assisting a customer to obtain insurance products or services. You acknowledge that nonpublic personal information obtained in course of selling or obtaining a quote on an ACE Company product or service may be shared with a third party only with the prior written approval of the appropriate ACE Company, which may be granted upon Your demonstration of full compliance with the privacy provisions of all applicable federal and state laws and regulations.

2.  Whenever You receive an application for insurance that is primarily for personal, family or household purposes, You will promptly provide such policyholder with a copy of the ACE USA privacy policy as provided to You by Us and will provide the ACE USA privacy policy to such policyholders and/or insureds annually and when required by law. You agree to use, maintain, secure, store, disclose, and protect all nonpublic personal information of policyholders and insureds in accordance with all federal and state laws and regulations governing the privacy and security of such information.

ACE0000160



**ace usa**

3. You agree that whenever requested, You will provide ACE Company policyholders with a copy of the ACE USA privacy policy as provided to You by ACE USA.

4. You and We agree to abide by the terms of their respective privacy policies, copies of which are attached hereto as Exhibit D. You and We each agree that their privacy policy will not be amended so as to adversely affect the other party's ability to disclose or use nonpublic personal information under the Agreement, except where the adversely affected party has given written permission following at least fifteen (15) days written notice of such change. You also agree to comply with Our privacy procedures as may be provided to You by Us at any time.

5. This Section XIV, Privacy of Information, shall survive the termination of this Agreement.

This Agreement is effective <u>04/01/2003</u>. Your acceptance of the foregoing terms and conditions is evidenced by You signing this Agreement.

| Name of Agent: | | For the Companies designated below: |
|---|---|---|
| Program Brokerage Corporation | | By: _____ (L.S.) |
| | | Name: Rose Flynn |
| Address: | | Title: Manager |
| 1065 Avenue of the Americas | | Date: 04/15/2003 |
| 15th Floor | | |
| New York, NY 10018-2506 | | |
| Code: 271631 | | |
| By: _____ (L.S.) | | |
| Name: Marc Colen | | |
| Title: President | | |
| Date: 6/24/03 | | |

☐ ACE American Insurance Company
☐ ACE Employers Insurance Company
☐ ACE Fire Underwriters Insurance Company
☐ ACE Indemnity Insurance Company
☐ ACE Insurance Company of Illinois
☐ ACE Insurance Company of Ohio
☐ ACE Insurance Company of Texas
☐ ACE Insurance Company of the Midwest
☐ ACE Property and Casualty Insurance Company
☐ Allied Insurance Company
☐ Atlantic Employers Insurance Company

☐ Bankers Standard Fire and Marine Company
☐ Bankers Standard Insurance Company
☒ Illinois Union Insurance Company
☐ INA Surplus Insurance Company
☐ Indemnity Insurance Company of North America
☐ Insurance Company of North America
☐ Oak Brook County Mutual Insurance Company
☐ Pacific Employers Insurance Company
☒ Westchester Fire Insurance Company
☒ Westchester Surplus Lines Insurance Company
☐ _____

Edition 3/03

Page 8 of 12

ACE0000161



**ace usa**

## ACE USA COMPANIES
### Exhibit A To The Agency/Company Agreement

You may submit information to us and request a premium quotation for the business divisions designated below:

| | |
|---|---|
| ☐ Accident & Health | ☐ Recreational Marine |
| ☒ ACE Risk Management | ☒ Westchester Specialty |
| ☐ Aerospace |     ☐ Affinity |
| ☐ Diversified Risk |     ☒ Casualty |
|     ☐ ACE Medical Risk |     ☒ Inland Marine |
| ☐ Marine |     ☐ Property |
| ☐ Professional Risk | ☐ Other _____ |
| ☒ Property | |

Further modification to your Agreement may be appropriate and/or necessary in conjunction with the business divisions for which you are authorized. Such modifications, if any, are as follows:

_____

_____

_____

_____

This Exhibit is effective 04/01/2003 .

Name of Agent:
Program Brokerage Corporation

Address:
1065 Avenue of the Americas
15th Floor
New York, NY 10018-2506

Code: 271631

For the Companies designated below:

By: _~Rose Flynn~_ (L.S.)

Name: Rose Flynn

Title: Manager

Date: 04/15/2003

| | |
|---|---|
| ☐ ACE American Insurance Company | ☐ Bankers Standard Fire and Marine Company |
| ☐ ACE Employers Insurance Company | ☐ Bankers Standard Insurance Company |
| ☐ ACE Fire Underwriters Insurance Company | ☒ Illinois Union Insurance Company |
| ☐ ACE Indemnity Insurance Company | ☐ INA Surplus Insurance Company |
| ☐ ACE Insurance Company of Illinois | ☐ Indemnity Insurance Company of North America |
| ☐ ACE Insurance Company of Ohio | ☐ Insurance Company of North America |
| ☐ ACE Insurance Company of Texas | ☐ Oak Brook County Mutual Insurance Company |
| ☐ ACE Insurance Company of the Midwest | ☐ Pacific Employers Insurance Company |
| ☐ ACE Property and Casualty Insurance Company | ☒ Westchester Fire Insurance Company |
| ☐ Allied Insurance Company | ☒ Westchester Surplus Lines Insurance Company |
| ☐ Atlantic Employers Insurance Company | ☐ _____ |

ACE0000162



**ace usa**

# ACE USA COMPANIES
## Exhibit C To The Agency/Company Agreement

Your Relationship with Us Includes Your Office and Location Listed Below:

Name: ___Program Brokerage Corporation___

Branch Office Location:   Name: _____

Address: _____

Code(s): _____

You may submit information to us and request a premium quotation for the business divisions designated below:

- ☐ Accident & Health
- ☐ ACE Risk Management
- ☐ Aerospace
- ☐ Diversified Risk
  - ☐ ACE Medical Risk
- ☐ Marine
- ☐ Professional Risk
- ☐ Property

- ☐ Recreational Marine
- ☐ Westchester Specialty
  - ☐ Affinity
  - ☐ Casualty
  - ☐ Inland Marine
  - ☐ Property
- ☐ Other _____

For the Companies designated below:

- ☐ ACE American Insurance Company
- ☐ ACE Employers Insurance Company
- ☐ ACE Fire Underwriters Insurance Company
- ☐ ACE Indemnity Insurance Company
- ☐ ACE Insurance Company of Illinois
- ☐ ACE Insurance Company of Ohio
- ☐ ACE Insurance Company of Texas
- ☐ ACE Insurance Company of the Midwest
- ☐ ACE Property and Casualty Insurance Company
- ☐ Allied Insurance Company
- ☐ Atlantic Employers Insurance Company

- ☐ Bankers Standard Fire and Marine Company
- ☐ Bankers Standard Insurance Company
- ☐ Illinois Union Insurance Company
- ☐ INA Surplus Insurance Company
- ☐ Indemnity Insurance Company of North America
- ☐ Insurance Company of North America
- ☐ Oak Brook County Mutual Insurance Company
- ☐ Pacific Employers Insurance Company
- ☐ Westchester Fire Insurance Company
- ☐ Westchester Surplus Lines Insurance Company
- ☐ _____

Name of Agent:
___Program Brokerage Corporation___

Address:
___1065 Avenue of the Americas___
___15th Floor___
___New York, NY   10018-2506___

This Exhibit is effective __04/01/2003__ .

Code: __271631__

Edition 3/03

ACE0000163



**ace usa**

# ACE USA PRIVACY POLICY
## Exhibit D To The Agency/Company Agreement

The ACE USA Group of Insurance Companies values its relationships with customers. Protecting the privacy of customer information is of great importance. ACE wants each customer to understand how the confidentiality of that information is protected, and under what circumstances it may be disclosed. The following describes the practices and procedures for protecting the security of nonpublic personal information regarding ACE customers both while ACE Companies are in a direct relationship, and subsequently. This privacy policy applies to all ACE USA insurance companies, which are a part of the ACE Group of Companies.

## INFORMATION COLLECTED

The information collected with respect to customers varies depending on the type of product or service applied for or purchased, and may include:

* Information received from a customer, such as name, address, age, phone number, social security number, assets, income, or beneficiaries;

* Information regarding a customer's transactions with ACE Companies and their affiliates, or with others; such as policy coverage, premium, payment history, motor vehicle records; and

* Information received from a consumer-reporting agency, such as a customer's credit history.

## INFORMATION DISCLOSED

ACE Companies will not disclose any personal information with respect to a customer to anyone except as is necessary in order to provide products or services to that customer or otherwise as may be required or permitted by law.

ACE Companies may disclose any of the information that is received to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements.

## RIGHTS OF CUSTOMERS TO VERIFY THE ACCURACY OF INFORMATION COLLECTED

Maintaining the accuracy and currency of customer information is important. A customer may review and correct their personal information in the possession of ACE Companies, except for information relating to a claim or a criminal or civil proceeding.

## CONFIDENTIALITY AND SECURITY

Access to personal information about a customer is restricted to ACE employees, employees of affiliates of ACE Companies, or others who have a need to know that information in order to service a particular account. Physical, electronic, and procedural safeguards shall be maintained at all times to protect personal information of ACE customers.

Edition 3/03

ACE0000164



**ace usa**

**COMMUNICATIONS**

Any questions received from customers concerning the ACE USA Privacy Policy may be referred to ACE Customer Relations, 1601 Chestnut Street TL35D, P.O. Box 41484, Philadelphia, PA 19101-1484.

**AGENT PRIVACY POLICY**

Edition 3/03

ACE0000165