IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MACLAREN EUROPE LIMITED,<br><br>                      Plaintiff,<br><br>  -against-<br><br>ACE AMERICAN INSURANCE COMPANY,<br>a/k/a ACE USA,<br><br>                      Defendant. | Index No.: 11-cv-4688 (HB) |

## DECLARATION OF WILLIAM P. DEVITO, ESQ.

WILLIAM P. DEVITO, pursuant to 28 U.S.C. § 1746(2), declares under penalty of perjury that the following is true:

1. I am the Assistant General Counsel at Hub International Group Northeast, Inc. ("HUB"), located at 100 Sunnyside Blvd, Woodbury, New York 11797. I am in good standing of the Bar of New York. HUB is the parent company of Program Brokerage Corporation ("PBC").

2. The statements made herein are true based upon my own personal knowledge and/or upon information and belief.

3. I submit this Declaration in support of Defendant ACE American Insurance Company's ("ACE") opposition to Plaintiff's motion for summary judgment.

4. As indicated in my prior Declaration dated June 13, 2012, PBC acted as a wholesale broker in connection with the placement of two ACE International Advantage Commercial Insurance Policies under which Maclaren Europe Limited ("MEL") and Maclaren Hong Kong Limited ("MHK") were named insureds. PBC placed these policies with ACE at the direction of Rana Sahni and his brokerage companies (collectively, "Sahni" or "SRM"). Sahni

NY/959900v1

acted as the retail broker on the placement of these policies, and PBC was wholesale broker, or sub-broker.

5. On February 27, 2006, ACE advised PBC that, due to new treaty restrictions, it could only offer a quotation for a $2 million general liability limit on the renewal. A true and correct copy of this email is attached hereto as Exhibit A.

6. That same day, ACE sent a renewal quote to PBC which included $2 million limit of liability with a premium of $32,500, which was faxed to Alan Magner at SRM on March 6, 2006. A true and correct copy of the facsimile and renewal quote is attached hereto as Exhibit B.

7. By email dated March 6, 2006 (at 1:03 PM), PBC advised Magner that ACE was trying to provide an additional $2 million of coverage on top of the $2 million general liability limit previously quoted. A true and correct copy of this email string is attached hereto as Exhibit C.

8. Magner responded to PBC that same day, indicating that he did not think the quote was "so great," and that he needed the $5 million limit that had been provided in the 2005 policy. PBC responded that ACE could not provide the higher limits because of treaty restrictions. Magner then advised PBC that "other brokers" were competing on the policy, and he needed the renewal premium to be reduced. See Exhibit C.

9. On or about March 6, 2006, ACE sent a revised renewal quote with increased limits of $5 million for a premium of $50,311, which was sent by facsimile to Magner. A true and correct copy of the facsimile and revised renewal quote is attached hereto as Exhibit D.

10. Because SRM was not satisfied with the quotes offered by ACE, it asked PBC to obtain quotes from other insurers. As such, on March 9, 2006, PBC inquired as to whether the AIG – Global Unit would provide a quote, but was advised that same day that it was not

something this insurer would write. A true and correct copy of this email string is attached hereto as Exhibit E.

11.   On April 2, 2006, PBC indicated that it would contact Travelers, Hartford, and CNA for quotes on the foreign liability coverage which already had been quoted by ACE. True and correct copies of emails dated April 2 and 3, 2006, are attached hereto as Exhibit F.

12.   On April 4, 2006, PBC contacted St. Paul/Travelers to see if it was interested in providing a quote for the foreign liability coverage. A true and correct copy of this email is attached hereto as Exhibit G.

13.   By email dated April 6, 2006 (12:36 PM), PBC advised SRM that St. Paul/Travelers could not provide a competitive quote, CNA declined to provide a quote, Hartford could not provide a competitive quote, and ACE had the most competitive quote. A true and correct copy of this email is attached hereto as Exhibit H.

14.   PBC had a Broker/Company Agreement with ACE USA effective April 1, 2003. According to the Agreement on page 2, it expressly applied only to the insurance companies that subscribed to it as listed on Exhibit A to the Agreement. ACE American Insurance Company was not a signatory to this Agreement. A true and correct copy of this Agreement is attached hereto as Exhibit I.

15. PBC did not act as ACE's agent with respect to the International Advantage policies that PBC brokered on behalf of MEL. PBC had no apparent or actual authority from ACE to bind it to any insurance coverage.

So Sworn this 22nd day of June, 2012

I declare under penalty of perjury that the foregoing is true and correct.

_____
William P. DeVito, Esq.