PAUL S. HUGEL (PH4749)
CLAYMAN & ROSENBERG LLP
305 Madison Avenue – Ste 1301
New York, New York 10165
(212) 922-1080 telephone
(212) 949-8255 facsmile

*Attorneys for Plaintiff*
*Maclaren Europe Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MACLAREN EUROPE LIMITED,            :
                                    :
              Plaintiff,            :
                                    :   INDEX No. 11 cv 4688 (HB)
   -against-                        :
                                    :
ACE AMERICAN INSURANCE COMPANY,     :
a/k/a ACE USA,                      :
                                    :
              Defendant.            :
---------------------------------------------------------------x

PLAINTIFF'S RESPONSE TO
DEFENANT'S RULE 56.1 STATEMENT

Plaintiff Maclaren Europe Limited ("MEL"), hereby responds to Defendant's Local Rule 56.1 Statement as follows:

1. The owners of MEL and Maclaren Hong Kong are a mother and daughter. The shareholders of Maclaren USA include two other members of the same family, as well as an unrelated investor. There is no common ownership of MEL and Maclaren Hong Kong on the one hand and Maclaren USA on the other. Rastegar Dep. at 18, 28-29, 68 and 77, Lahr Dec., Exh. 16. Plaintiff agrees that the remaining statements contained in paragraph 1 of ACE's Rule 56.1 statement are not in dispute.

2. Plaintiff agrees that the statements contained in paragraph 2 of ACE's Rule 56.1 statement are not in dispute.

3. Mr. Rastegar, who later became shareholder of Maclaren USA, resigned as a director of MEL when he became a shareholder of Maclaren USA. Rastegar Dep. at 68, and Lahr Dec., Exh. 16. Plaintiff agrees that the remaining statements contained in paragraph 3 of ACE's Rule 56.1 statement are not in dispute.

4-11. Plaintiff agrees that the statements contained in paragraphs 4-11 of ACE's Rule 56.1 statement are not in dispute.

12. Acela provided IT and technical services to Maclaren USA under a services contract. Rastergar Dep. at 93, Lahr Dec., Exh. 16. Plaintiff agrees that the remaining statements contained in paragraph 3 of ACE's Rule 56.1 statement are not in dispute.

13-17. Plaintiff agrees that the statements contained in paragraphs 13-17 of ACE's Rule 56.1 statement are not in dispute.

18. MEL and Maclaren Hong Kong did not "frequently pool resources" with Maclaren USA. The only evidence offered by ACE to support this fictitious claim is the testimony of Mr. Rastegar in that in late 2006 (six years after it started business) Maclaren USA shut down its US telephone customer service center and entered into a contract with MEL to provide telephone customer service for its customers. He stated that this was because "the team in the UK was very well qualified and they had an English accent too, and that is more appealing to the American market." Rastegar Dep. at 171; and Lahr Dec., Exh. 16. ACE's assertion that the companies have "frequently pooled resources" is disingenuous and unsupported by the evidence.

19. The evidence cited by ACE does not show that Maclaren USA "served as an agent and facilitator of MEL and MHK in procuring international insurance." Maclaren USA's CFO testified to exactly the opposite. Zarem Dep. at 77-78; and Lahr Dec., Exh. 14.

20-28. Plaintiff agrees that the statements contained in paragraphs 20-28 of ACE's Rule 56.1 statement are not in dispute.

29. ACE selectively quotes from the email, which makes it clear that Maclaren USA and Maclaren Europe were separate companies. Hugel Dec., Exh. N. Plaintiff agrees that the remaining statements contained in paragraph 29 of ACE's Rule 56.1 statement are not in dispute.

30. ACE's assertion is inaccurate. The 2004 application does not in any way designate the Connecticut address as MEL's address. It indicates that the policy was for companies in the USA, U.K. and Hong Kong and then provided three addresses, one in the US, one in the U.K. and one in Hong Kong. Hugel Dec., Exh. N. As evidenced by subsequent email from ACE, it was aware that the only company with a U.S. address was Maclaren USA. Hugel Dec., Exh. P at 2.

31. Plaintiff agrees that the remaining statements contained in paragraph 31 of ACE's Rule 56.1 statement are not in dispute.

32. This is incorrect. The proposal made by ACE specifically states that it was for insurance to cover MEL and Maclaren Hong Kong only. Hugel Dec., Exh. O at 1. The request to bind coverage by the broker explicitly stated that ACE was to bind coverage only for MEL and Maclaren Hong Kong. Hugel Dec., Exh. O at 3.

33. This is inaccurate and ACE offers no evidence to support this assertion. Since Maclaren USA only sold strollers in the US, the policy that was sold by ACE, which excluded the U.S. offered no benefit whatsoever to Maclaren USA. The baseless assertion by ACE's

3

corporate representative that "it stood to benefit from this coverage in the event one of its strollers was taken overseas by a purchaser" is contradicted by the fact that Maclaren USA's broker specifically directed ACE *not* to bind coverage for Maclaren USA on the ACE policy. Hugel Dec., Exh. O at 3. Maclaren USA's CFO also testified that he neither wanted nor knowingly purchased such insurance. Zarem Dep. at 162, and Lahr Dec., Exh.14. It is also contradicted by the fact that when ACE finally removed Maclaren USA from the policy in September 2004, there was no change in the premium. Hugel Dec., Exh. C at 1.

34. Plaintiff agrees that the statements contained in paragraph 34 of ACE's Rule 56.1 statement are not in dispute.

35. ACE issued the 2004 policy *incorrectly* listing Maclaren USA and MEL as the named insured. Hugel Dec., Exh. C. ACE was instructed that Maclaren USA was not supposed to on the policy at all. *Id.* Exh. O at 3. ACE had agreed to bind insurance for MEL and Maclaren Hong Kong only. *Id.* at p 5. Since Maclaren USA was incorrectly listed as the first named insured, its mailing address was listed as the address of the first named insured. *Id.* Exh. C.

36. Sahni mistakenly sent the invoice for the 2004 policy to Maclaren USA (likely because ACE had improperly listed it as the first named insured). Maclaren USA then forwarded an invoice to MEL and Maclaren Hong Kong for the entire premium on the 2004 policy. The evidence cited by ACE does not indicate whether MEL and Maclaren Hong Kong paid Sahni directly, or if Maclaren USA mistakenly paid Sahni and was reimbursed by MEL and Maclaren Hong Kong.

37. The invoice faxed by Maclaren USA was for the entire premium. Zarem Dep. at 82; and Lahr Dec., Exh. 14. No part of the premium for the 2004 policy was apportioned to Maclaren USA.

38. The broker explicitly told ACE why it was instructing ACE to remove Maclaren USA from the policy. She told ACE that the insurance bound only for MEL and Maclaren Hong Kong and therefore Maclaren USA was not supposed to be on the policy. Hugel Dec., Exh. P.

39-40. Plaintiff agrees that the statements contained in paragraphs 39 - 40 of ACE's Rule 56.1 statement are not in dispute.

41. The address on the ACORD form stated that it was for Maclaren Hong Kong Limited, not Maclaren Europe. Thompson Dec., Exh. B; and Lahr Dec., Exh. 15. This was obviously an error by the broker and ACE was aware from the initial application that Maclaren Hong Kong's office was in Hong Kong. The only change being requested in the Chance Request was listed on the last page which read "please delete Maclaren USA…". *Id.*

42. Listing the Connecticut address for the company it had been asked to remove from the policy was not consistent with the request made by the broker. Plaintiff agrees that the remaining statements contained in paragraph 42 of ACE's Rule 56.1 statement are not in dispute.

43. Sahni began using Program Brokerage Corporation ("PBC") as a sub-broker in 2005. Since Maclaren USA was no longer (even mistakenly) listed as an insured when the ACE policy came up for renewal in 2005, it would have no need to designate a broker for the renewal. Zarem Dep. 167-169; and Lahr Dec.Exh.14.

44. Although Zarem signed a letter appointing PBC as Maclaren USA's broker for the renewal of the ACE policy this was meaningless. Maclaren USA had been removed from the policy five months before Zarem it was renewed. Hugel Dec., Exh. C at 1. Zarem testified that he did **not** sign the document on behalf of MEL and that he was not "authorizing anyone to do anything on behalf of Maclaren Europe" by signing it. Zarem Dep. at 167; and Lahr Dec., Exh. 14. The most reasonable explanation for why Zarem signed a letter appointing a broker for

Maclaren USA on a policy that no longer covered Maclaren USA, was that it was simply an error by Sahni who prepared the letter. Zarem Dep. 185; and Lahr Dec., Exh. 14. Sahni provided seven different insurance policies to Maclaren USA and likely and in preparing the requests to change sub-brokers, Sahni and Zarem simply included this one in error. Zarem Dep. at 154; and Lahr Dec., Exh. 14.

45.     Zarem testified to the exact opposite of this conclusion. He testified that he signed the broker of record letter (which is in any event a meaningless document) *only* on behalf of Maclaren USA that he was not "authorizing anyone to do anything on behalf of Maclaren Europe" by signing it. Zarem Dep. at 167; and Lahr Dec., Exh.14. MEL dealt directly with Sahni and paid Sahni for the renewal. Hugel Dec., Exh. J.

46.     Plaintiff agrees that the statements contained in paragraph 46 of ACE's Rule 56.1 statement are not in dispute.

47.     Although the letter sent by Sahni listed the Connecticut address for Maclaren USA, he faxed it to Helen Lynch, who was the person at MEL handling insurance matters, and it was faxed by Sahni to MEL's offices in England. Hugel Reply Dec., Exh. 4. This in no way supports the bogus assertion by ACE that Maclaren USA was "facilitating the placement of the coverage."

48 – 60. Plaintiff agrees that the statements contained in paragraphs 48-60 of ACE's Rule 56.1 statement are not in dispute.

61.     The declaration page of the policy stated that the premium was "Due when coverage begins" which would be April 10, 2006. Hugel Dec., Exh. 61. The letter accompanying the policy stated that PBC was required to remit the premium to ACE by May 30, 2006. Thomspon Dec., Exh. F.

62. Plaintiff agrees that the statements contained in paragraph 62 of ACE's Rule 56.1 statement are not in dispute.

63. Although the letter sent by Sahni listed the Connecticut address for Maclaren USA, it was addressed to the MEL employee handling its insurance matters, who worked in the England. Although MEL has been unable to locate the fax cover sheet, the document was found in MEL's offices in the England and the fax track at the top of the document shows that it was faxed only once. This indicates that, like the prior coverage letter sent by Sahni to MEL, it was faxed to Ms. Lynch at MEL's office in England. Hugel Reply Dec., Exh. 4.

64-65. Plaintiff agrees that the statements contained in paragraphs 64-65 of ACE's Rule 56.1 statement are not in dispute.

66. MEL disputes that the policy's cancellation provisions are in conformity with New York law. Pursuant to the Conformity with Law clause contained in the policy, they are therefore deemed to be amended to comply with New York Insurance Law § 3426. In any event, since the policy could not be cancelled in a manner prohibited by New York law, ACE could not effectively cancel the policy by following the cancellation provisions contained in the policy.

67-71. Plaintiff agrees that the statements contained in paragraphs 67-71 of ACE's Rule 56.1 statement are not in dispute.

72. MEL paid the premium for the 2006 policy to Sahni prior to the cancellation of the policy. Hugel Dec, Exhs. J & K. The payment to by Sahni constituted payment to ACE pursuant to New York Insurance Law § 2121.

73. Plaintiff agrees that the statements contained in paragraph 73 of ACE's Rule 56.1 statement are not in dispute.

74.     Zarem testified that he had no recollection of receiving the cancellation notice. Zarem Dep, at 99; and Lahr Dec., Exh. 14. While a copy of the notice was recently located in files maintained by Maclaren USA, there was no record of it having been forwarded to MEL. The notation on the document indicates that only action Zarem took concerning the document was to phone Sahni. The evidence overwhelming demonstrates that he did not send it to MEL as: 1) it did not exist in MEL's files; 2) there is no evidence of it being in any way communicated or forwarded to MEL; 3) there is no email to or from MEL discussing an early cancellation of the policy or a theft of premium money by Sahni; 4) correspondence from Sahni in December 2006 from Sahni indicating that the policy was still in effect; and 5) there is an abundance of emails showing that, up until 2009, MEL believed it had coverage from ACE for the full policy period. Hugel Dec., Exhs. T & Z; and Hugel Reply Dec., Exh. 5.

75.     MEL paid the premium to Sahni. Hugel Dec, Exh. J & K. The payment to Sahni constituted payment to ACE pursuant to New York Insurance Law § 2121. The premium was paid by MEL for renewal coverage while the 2005 policy was still in effect. The payment by MEL was in excess of the amount subsequently billed by ACE for the one month extension of the 2005 policy and the 2006 renewal. ACE was therefore paid in full.

76-77.  Plaintiff agrees that the statements contained in paragraph 76-77 of ACE's Rule 56.1 statement are not in dispute.

78.     A review of these documents referenced by ACE (Hugel Reply Dec., Exh. 3) will show the Court that, if anything, the documents sent by ACE would lead MEL to believe the policy was still in effect. Pages 3 and 4 of the documents indicate that the policy would remain in effect until April 2007. A handwritten note on the statements shows that MEL's controller faxed

8

them to Sahni asking him to look into it. *Id.* Email from 2007 shows that MEL believed the policy remained in effect through April 2007. Hugel Dec., Exhs. T & Z.

      79-80.  Plaintiff agrees that the statements contained in paragraphs 79-80 of ACE's Rule 56.1 statement are not in dispute.

      81.  ACE has offered no evidence as to whether it did any business directly with Sahni and Plaintiff is not aware of any evidence that he did or did not.

      82.  ACE provided Sahni with authority to collect the premium for the 2006 policy by operation of New York Insurance Law § 2121. Although not a request for application of § 2121, ACE was aware that Sahni's company was involved in the procurement of the policy as its name, address and phone number appeared on the 2006 renewal application. Hugel Dec., Exh. Q at 4.

Dated: New York, New York
       June 25, 2012

                                    CLAYMAN & ROSENBERG LLP
                                    ATTORNEYS FOR PLAINTIFF

      By:        /s
                Paul S. Hugel (PH4749)
                305 Madison Avenue - Suite 1301
                New York, New York 10165
                (212) 922-1080 phone
                (212) 949-8255 facsimile