**MANDATE**

N.Y.S.D. Case # 11-cv-4688(HB)

12-4844-cv
Maclaren Europe Ltd. v. ACE Am. Ins. Co.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of November, two thousand thirteen.

PRESENT:  ROBERT D. SACK,
          DENNY CHIN,
          CHRISTOPHER F. DRONEY,
                    Circuit Judges.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 9, 2013

- - - - - - - - - - - - - - - - - - - - - - - - - -

MACLAREN EUROPE LIMITED,
                    Plaintiff-Appellee,

            -v-                                        12-4844-cv

ACE AMERICAN INSURANCE COMPANY, a/k/a ACE USA,
                    Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLEE:      PAUL S. HUGEL, Clayman & Rosenberg LLP, New York, New York.

FOR DEFENDANT-APPELLANT:     JOSEPH K. POWERS (J. Gregory Lahr and Thomas R. Orofino, on the brief), Sedgwick LLP, New York, New York.

        Appeal from the United States District Court for the Southern District of New York (Baer, J.).

**MANDATE ISSUED ON 12/09/2013**

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant ACE American Insurance Company ("ACE") appeals from the district court's November 8, 2012 judgment entered pursuant to the court's November 5, 2012 opinion and order, which granted summary judgment to plaintiff-appellee Maclaren Europe Limited ("Maclaren") and charged ACE with receipt of the insurance premium Maclaren had paid to a broker, Rana Sahni ("Sahni"), pursuant to New York Insurance Law § 2121. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

"We review an order granting summary judgment de novo, drawing all factual inferences in favor of the non-moving party." Kwong v. Bloomberg, 723 F.3d 160, 164 (2d Cir. 2013) (internal quotation marks omitted). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After an independent review of the record, we conclude that Maclaren was entitled to summary judgment on its claim for declaratory judgment and affirm the judgment of the district court.

On appeal, ACE concedes that it is subject to New York Insurance Law § 2121, but argues that the payment to the broker

- 2 -

was not covered by Section 2121 because Maclaren made the payment <u>before</u> ACE issued the policy. Because the broker wrongfully converted the payment before the policy was issued, ACE argues that it was entitled to cancel the policy for non-payment of the premium. We reject this argument.

New York Insurance Law § 2121(a) provides in relevant part:

> Any insurer which delivers in this state to any insurance broker . . . a contract of insurance pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance . . . or any additional premium which becomes due or payable thereafter . . . , provided such payment is received by such broker within ninety days after the due date of such premium . . . .

A literal reading of this provision supports Maclaren's position. On its face, the statute merely requires the insurer to deliver the policy to the broker for the broker to be deemed the insurer's agent. Here, ACE delivered the policy to Sahni.

ACE argues that the plain language places temporal limits on the broker-insured relationship. ACE asserts that the phrase "at the time of its issuance" implies that an insured is covered by Section 2121 only if the insurer has actually issued the contract. Read in context, however, the phrase "at the time

- 3 -

of its issuance" modifies the phrase "any premium," and was therefore included to describe the _type_ of payments covered under Section 2121.  Section 2121 could therefore protect insureds for payments on premiums due: (1) _in toto_ at the time of issuance; (2) as an installment at the time of issuance; and (3) later during the life of the contract, up to 90 days after payment was due.  ACE's argument requires words to be read into the statute -- that only payments made _after_ the policy is delivered are covered.

Nevertheless, there is some ambiguity in Section 2121 because it is silent on the issue of pre-payment.  We discern two possible interpretations.  First, the statute arguably sets forth a risk-shifting scheme: an insurer who delivers a policy to a broker assumes the risk of loss for any payment the insured makes to the broker for the policy, and is therefore liable under Section 2121 for the broker's misappropriation.  _See_ _Greater N.Y. Mut. Ins. Co. v. Axentiou_, 597 N.Y.S.2d 401, 401 (1st Dep't 1993) (quoting _Bohlinger v. Zanger_, 306 N.Y. 228, 237 (1954) (Fuld, J., dissenting)).  Second, however, the statute could set forth a rule governed by agency principles.  Under this framework, advance payment of premiums to a broker would be imputed to the insurer for purposes of Section 2121 only if some kind of relationship exists between the insurer and the broker, such that the payment was "in return for, or referable to," the

- 4 -

policy at issue.  See 18th Ave. Realty Corp. v. Aetna Cas. & Sur. Co., 659 N.Y.S.2d 17, 18 (1st Dep't 1997).

We need not reach the question of whether Section 2121 is a strict loss-allocation rule or a rule governed by agency principles, however, because Maclaren prevails under either scenario.  A risk-shifting scheme would mean that ACE assumed the risk when it submitted the policy to Sahni, regardless of when Maclaren remitted payment.  Because ACE delivered the policy to Sahni, ACE is deemed to have authorized Sahni to receive payment on its behalf, and ACE bore the risk that Sahni would fail to turn over the funds he had earlier collected.  Cf. Globe Indem. Co. v. Gilligan, 341 N.Y.S.2d 18, 20 (Dist. Ct. Suffolk County 1973) (money insured paid to broker before insurer issued policy to broker "constituted a credit to the [insured's] account held by the broker and should be deemed as payment under [Section 2121]").

If the statute is interpreted according to traditional agency principles, the undisputed facts establish that Sahni was ACE's agent for purposes of payment and that therefore ACE was properly charged with having received payment.  For three policies covering three consecutive years, Sahni was an intermediary between ACE and Maclaren.  In March 2004, ACE invoiced Sahni for payment, which Sahni received from Maclaren and then forwarded to ACE (through a wholesale broker).  Sahni

- 5 -

served as the intermediary for successfully concluded insurance contracts between ACE and Maclaren in 2004 and 2005. In 2006, the third year of the parties' relationship, Maclaren and Sahni followed the steps they had taken to renew Maclaren's policy with ACE the prior year: Sahni was going to go back to the same insurer, without any suggestion that Sahni was considering looking at other companies.

The record thus contains undisputed facts showing that when Maclaren transmitted its prepayment to Sahni, it believed that Sahni would apply these funds toward the renewal of the existing policy, as he had done in 2005. Although Maclaren later considered quotes from other insurers as well, ACE extended the 2005 policy for 30 days while the renewal policy was being negotiated. ACE ultimately proceeded to issue Maclaren a new policy for 2006. In light of this ongoing relationship between the parties and ACE's history of authorizing Sahni to act as its agent for collection purposes, there can be little doubt that the premiums Maclaren advanced to Sahni were "referable to" the policy ACE issued for 2006. See 18th Ave. Realty Corp, 659 N.Y.S.2d at 18 (protection under section 2121 can be triggered only when a broker possesses funds of the insured that "were payments in return for, or referable to," the policy in dispute). Hence, the only conclusion a reasonable factfinder could reach is that Sahni was ACE's agent

- 6 -

for purposes of receiving payment.  As a result, ACE can be charged with the receipt of the premiums that Maclaren had advanced to Sahni.

We have considered ACE's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit